1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

9

10   LANCE WILLIAMS,                              Case No. CV 20-1373-PA (KK)

11                          Plaintiff,

12              v.                                 ORDER DISMISSING SECOND
                                                   AMENDED COMPLAINT WITH
13   S. SABO, ET AL.,                              LEAVE TO AMEND

14                          Defendant(s).

15

16

17                                    **I.**

18                            **INTRODUCTION**

19         Plaintiff Lance Williams ("Plaintiff"), proceeding <u>pro se</u> and <u>in forma pauperis</u>,

20   filed a Second Amended Complaint ("SAC") pursuant to 42 U.S.C. § 1983 ("Section

21   1983") setting forth seven claims against thirty-three defendants.  For the reasons

22   discussed below, the Court dismisses the FAC with leave to amend.

23                                    **II.**

24                            **BACKGROUND**

25         On February 3, 2020, Plaintiff, an inmate at California Men's Colony – East

26   ("CMC"), constructively filed[1] a Complaint against defendants John/Jane Does 1-10,

27   _____

28   [1]     Under the "mailbox rule," when a <u>pro se</u> prisoner gives prison authorities a
     pleading to mail to court, the court deems the pleading constructively "filed" on the
     date it is signed.  <u>Roberts v. Marshall</u>, 627 F.3d 768, 770 n.1 (9th Cir. 2010); <u>see</u>

S. Sabo, E. De La Garza, J. Gastelo, and "Jane Doe – CMC intake nurse on 9-11-19" in their individual and official capacities.  ECF Docket No. ("Dkt.") 1.  Plaintiff set forth four "claims" alleging various violations of his First and Eighth Amendment rights.  Id.  Plaintiff also filed a Request for Leave to Proceed Without Prepayment of Filing Fee ("IFP Request").  Dkt. 2.

On February 18, 2020, the Court denied Plaintiff's IFP Request because Plaintiff has accumulated three "strikes" under 28 U.S.C. § 1915(g) and the Complaint failed to allege facts satisfying the imminent danger exception.  Dkt. 5.

On April 2, 2020, Plaintiff constructively filed a First Amended Complaint ("FAC") against defendants J. Steek, R. Hughes, D. Taylor, C. Rodis, K. Lino, M. Reynoso, K. Cox, C. Tomasini, S. Sabo, J. Gastelo, "Jane Doe – CMC intake nurse on 9-11-19", S. Gates, and R. Farley in their individual and official capacities and defendants E. De La Garza, D. Joseph, R. Hernandez, L. McEwen, and T. Macias in their individual capacity.  Dkt. 15.  Plaintiff set forth six "claims" again alleging various violations of his First and Eighth Amendment rights.  Id.  On April 8, 2020, in light of the allegations in the FAC, the Court vacated the Order denying Plaintiff's IFP Request and granted Plaintiff leave to proceed in forma pauperis.  Dkts. 12, 13.

On May 6, 2020, the Court granted Plaintiff's motion for an opportunity to file a Second Amended Complaint before proceeding with screening the FAC pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  Dkt. 18.

On June 1, 2020, Plaintiff constructively filed the instant SAC.  Dkt. 27.  The SAC sets forth seven "claims" against the following thirty-three defendants: (1) J. Steek, ADA Coordinator/AW, (2) R. Hughes, HCA Captain (A), (3) D. Taylor, P&S, (4) C. Nudis, HC Compliance Analyst, (5) K. Lino, HC Appeals Coordinator, (6) M. Reynoso, Custody Appeals Coordinator, (7) K. Cox, Custody Assistant Appeals Coordinator, (8) C. Tomasini, Correctional Counselor I, (9) S. Sabo, Medical Doctor,

---

Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to Section 1983 suits filed by pro se prisoners").

(10) E. De La Garza, Correction Officer, (11) R. Hernandez, Correctional Officer, (12) D. Joseph, Correctional Officer, (13) L. McEwen, Sergeant 2nd Watch, (14) M. Bellarose, Correctional Counselor I, (15) D. Brazil, Correctional Counselor I, (16) J. Cappalla, Correctional Officer, (17) J. Gastelo, Warden, (18) Jane Doe, CMC intake nurse on 9/11/2019, (19) S. Gates, Chief Health Care Appeal Correspondent, (20) T. Macias, Chief Executive Officer, (21) M. Leek, Correctional Counselor I, (22) C. Clifford, Correctional Counselor I, (23) R. Farley, Correction Officer, (24) D. Spiller, Correctional Counselor I, (25) D. Davis, Classification Staff Representative, (26) J. Close, Corrections Officer, (27) K. Olivera, Sergeant Correctional Officer, (28) A. Partida, Corrections Officer, (29) B. Schwartenbach, Corrections Officer, (30) Arguyo, Correctional Officer, (31) Sebern, Correctional Officer, (32) M. Williams, Correctional Counselor 2, and (33) Yuvalle, Correctional Officer ("Defendants").  Id. at 3-14.  Most defendants are sued in their individual and official capacities for violations of Plaintiff's First and Eighth Amendment rights.  Id.  Defendants Bellarose, Leek, Clifford, Spiller, Davis, Schwartenbach, Sebern, and Williams are also sued for various Fourteenth Amendment violations.  Id.

The SAC sets forth the following allegations:

In Claim One, Plaintiff alleges he was given a "permanent" low bunk chrono in 2015 when he was housed at California Medical Facility in Vacaville, California ("CMF").  Id. at 15.  On September 11, 2019, Plaintiff was transferred to CMC.  Id. Upon arrival at CMC, Plaintiff alleges defendant Sabo removed Plaintiff's UV sunglasses and low bunk chronos "without any type of medical evaluation by a doctor".  Id. at 16.  Plaintiff alleges "this was done in retaliation and to use as a mechanism to control Plaintiff preventing him from filing grievances and lawsuits." Id.  Plaintiff alleges defendant Sabo "was well aware of [the] fact [that] a permanent chrono is only issued if an inmate has a substantial risk of serious harm that exist[s] as Plaintiff does."  Id.  Plaintiff also alleges at intake on September 11, 2019, defendant Jane Doe assisted defendant Sabo "in removing" his chronos without evaluating

Plaintiff.  Id.  Upon discovering his chronos had been removed, Plaintiff filed grievances and "request[s] to have it placed back on immediately," but was repeatedly denied.  Id. at 17.  Plaintiff alleges he "filed reasonable accommodation appeal" and the medical employees involved, including defendants Gates, Macias, Steek, Hughes, Taylor, Nudis, Lino, Reynoso, Cox, and Tomasini, exhibited deliberate indifference "by not correcting the issue in the appeal."  Id. at 18.  Plaintiff alleges "there's no reason [his] appeal wasn't granted and his chronos reinstated other than retaliation and deliberate indifference."  Id.  Plaintiff alleges defendant Gastelo was alerted to Plaintiff's claims "via appeals he signed and he failed to correct this issue exhibiting deliberate indifference."  Id.

In Claim Two, Plaintiff alleges on December 23, 2019, he informed defendant Garza about his "serious physical injuries" resulting from being on a top bunk and told defendant Garza he would file a 602 appeal and pursue a lawsuit against defendant Garza if defendant Garza put him on a top bunk.  Id. at 19.  Defendant Garza then refused to accept, sign, or send Plaintiff's legal mail to the mailroom and told Plaintiff to get out of his office "before he gets hurt."  Id.  Plaintiff responded that he would file a 602 appeal and a lawsuit because his mail had to go out that day. Id.  Defendant Garza said "if you file any 602 (appeal) or lawsuit on me I'll make sure your [sic] on a top bunk and you get a blanket treatment which means to be beat to death which plaintiff took as a threat on his life, safety that he will be beat with soap bars, rocks, or locks placed in socks while being held down and beat repeatedly about the head and body."  Id. at 20.

In Claim Three, Plaintiff alleges on January 27, 2020, another inmate, Jett, was being harassed by defendant Garza.  Id. at 21.  When Jett confronted defendant Garza, defendant Garza told him "to go talk to plaintiff (Williams bunk 23 low) if he wants to file a 602 about him being harassed and have plaintiff (Williams) help you with it."  Id.  When Jett told Plaintiff about this comment, Plaintiff "took this as a threat being made on his safety . . . as if plaintiff was the reason why inmate Jett was

4

1   being harassed and antagonized all of which placed plaintiff in imminent danger of

2   serious physical injury." Id.

3       In Claim Four, Plaintiff alleges on March 12, 2020, he went to medical to get

4   labs and request an appointment for his shoulder that was in severe pain from having

5   "popped out of place." Id. at 22.  Defendant Hernandez told Plaintiff to remove his

6   "hat, jacket and du-rag and sit or go outside." Id.  Plaintiff asked if he could refuse.

7   Id.  Defendant Hernandez again told him to remove the items, "used vulgar language

8   towards" Plaintiff, and "aggressively rush[e]d plaintiff pushing him into [the] wall and

9   beg[]inning to search plaintiff using extreme excessive force causing multiple severe

10  internal injuries." Id.  Plaintiff then requested his ID and permission to leave, but

11  defendant Hernandez refused. Id. at 23.  Defendant Hernandez then made Plaintiff

12  wait for over 60 minutes "blowing kisses and laughing and making inappropriate

13  comments to Plaintiff about his case and saying he was a SNY snitch rat and he

14  should be killed", which Plaintiff alleges placed his safety at risk because it was said in

15  front of multiple inmates.  Id.  Plaintiff alleges he made two attempts to have a

16  sergeant intervene, but was "thwarted" by defendants Joseph, Brazil, and another

17  John Doe 2.  Id.  In addition, Plaintiff alleges he was "deprived of medical care" by

18  defendants Sabo and Hernandez after this incident.  Id.

19      In Claim Five, Plaintiff alleges on March 13, 2020, defendant Joseph told

20  Plaintiff he was moving him to a top bunk and "if you weren't being a asshole filing

21  appeals and threatening to file lawsuits all the time you wouldn't be moving, so look at

22  this as payback and if you wanna file any appeals or you threaten to sue any of us

23  officers again I will make you disappear, you'll never be heard from again." Id. at 24.

24  Plaintiff alleges he spoke to defendant McEwen on "multiple occasions" and

25  "informed him about his medical ailments and injuries and how much pain and

26  suffering Plaintiff would endure if he was moved to a top bed," but defendant

27  McEwen "still push[ed] the issue and approved the move exhibiting deliberate

28  indifference to Plaintiff's serious medical needs." Id.

In Claim Six, Plaintiff alleges since March 13, 2020, when he was moved to a top bunk, he has had multiple incidents where his shoulder has "popped out of place" as he descended from the top bunk, causing him to fall and hit his chin and resulting in severe back pain. Id. at 25. Plaintiff alleges "everytime he requested a MAN DOWN for his immediate injuries [defendant] c/o R. Farley denied plaintiff medical care always telling plaintiff your [sic] a young strong guy you'll be okay fill out a sick call slip or 602 it like you always do." Id. at 25-26. In addition, Plaintiff alleges on one occasion, when Plaintiff had slipped and bust his chin causing his mouth to bleed and knocking him unconscious momentarily, defendant Farley said "you got nothing coming since you filed a bunch of 602's on me and my partners, you could be having a heart attack dying an I'm not calling nobody so fill out a medical slip." Id. at 26.

In Claim Seven, Plaintiff alleges a "campaign of harassment" against him by defendants Spiller, Bellarose, Leek, Clifford, McEwen, Close, Cappalla, Arguyo, Olvera, Brazil, Joseph, Davis, Williams, Schwartzenback, Sebern, and Partida. Id. at 27-34. Plaintiff describes numerous events, including being assaulted on several occasions and sent to the hole (administrative segregation) without food, water, or medications for five days. Id.

Plaintiff seeks compensatory and punitive damages as well as injunctive relief removing him from administrative segregation, transferring him to a new facility where he must "remain on a lower bunk without a chrono until further notice by Plaintiff", permitting him to choose a facility of his choice, and referring him to the Board of Parole Hearings for parole review. Id. at 35.

### III.

### **STANDARD OF REVIEW**

Where a plaintiff is incarcerated and/or proceeding in forma pauperis, a court must screen the complaint under 28 U.S.C. §§ 1915 and 1915A and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a

6

defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A; <u>see</u> <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Rule 8, a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(a), (d).  In determining whether a complaint fails to state a claim for screening purposes, a court applies the same pleading standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  <u>See</u> <u>Watison v. Carter</u>, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  <u>Zamani v. Carnes</u>, 491 F.3d 990, 996 (9th Cir. 2007).  In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it.  <u>Hamilton v. Brown</u>, 630 F.3d 889, 892-93 (9th Cir. 2011).  However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  <u>In re</u> <u>Gilead Scis. Sec. Litig.</u>, 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Cook v.</u> <u>Brewer</u>, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed <u>pro se</u> is 'to be liberally construed,' and a '<u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  <u>Woods v. Carey</u>, 525 F.3d 886, 889-90 (9th Cir. 2008). However, liberal construction should only be afforded to "a plaintiff's factual

1   allegations," <u>Neitzke v. Williams</u>, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d

2   339 (1989), and a court need not accept as true "unreasonable inferences or assume

3   the truth of legal conclusions cast in the form of factual allegations," <u>Ileto v. Glock</u>

4   <u>Inc.</u>, 349 F.3d 1191, 1200 (9th Cir. 2003).

5          If a court finds the complaint should be dismissed for failure to state a claim,

6   the court has discretion to dismiss with or without leave to amend.  <u>Lopez v. Smith</u>,

7   203 F.3d 1122, 1126-30 (9th Cir. 2000).  Leave to amend should be granted if it

8   appears possible the defects in the complaint could be corrected, especially if the

9   plaintiff is <u>pro se</u>.  <u>Id.</u> at 1130-31; <u>see also</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1106

10  (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot

11  be cured by amendment, the court may dismiss without leave to amend.  <u>Cato</u>, 70

12  F.3d at 1107-11; <u>see also</u> <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 972 (9th Cir. 2009).

13                                                **IV.**

14                                        **DISCUSSION**

15  **A.     THE SAC IMPROPERLY JOINS DISTINCT CLAIMS**

16          **1.     Applicable Law**

17          A basic lawsuit is a single claim against a single defendant.  Federal Rule of

18  Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they

19  are against the same defendant.  Federal Rule of Civil Procedure 20(a)(2) allows a

20  plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of

21  the same "transaction, occurrence, or series of transactions" and "any question of law

22  or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  In

23  contrast, unrelated claims against different defendants must be brought in separate

24  lawsuits to avoid confusion and prevent "the sort of morass [a multiple claim,

25  multiple defendant] suit produce[s]."  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir.

26  2007) (noting that unrelated claims against different defendants should be brought in

27  different lawsuits, in part to prevent prisoners from circumventing filing-fee

28  requirements and three-strikes rule under Prison Litigation Reform Act); <u>Gonzalez v.</u>

                                              8

Maldonado, No. 1:11-cv-01774-SAB (PC), 2013 WL 4816038, at *2 (E.D. Cal. Sept. 9, 2013) (same).  When numerous claims are misjoined, the court can generally dismiss all but the first named defendant without prejudice to the institution of new, separate lawsuits against some or all of the present defendants based on the claim or claims attempted to be set forth in the present complaint.  Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997); Kirakosian v. J&L Sunset Wholesale & Tobacco, No. 2:16-CV-06097-CAS (AJWx), 2017 WL 3038307, at *3 (C.D. Cal. July 18, 2017) ("An accepted practice under Rule 21 is to dismiss all defendants except for the first defendant named in the complaint.").

### 2.      Analysis

Here, the SAC improperly joins seven unrelated claims against thirty-three defendants in their individual and official capacities.  For example, the SAC joins a claim against various defendants for removing Plaintiff's low bunk chrono and failing to remedy the issue on appeal (Claim One), with a claim against a different defendant for refusing to forward legal mail and threatening Plaintiff's safety (Claim Two). Plaintiff joins these distinct claims with other distinct claims against other defendants involving various separate incidents of excessive force and retaliation occurring after he filed the original Complaint.

Moreover, Plaintiff's apparent attempt to join his claims on the grounds that "he was a target of harassment, threats, assaults, retaliation and much more racial discrimination" since his arrival at CMC fails.  First, conclusory allegations of retaliation are insufficient to state a claim for retaliation.  See Williams v. Wood, 223 F. App'x 670 (9th Cir. 2007) (affirming dismissal of conclusory allegations of retaliatory transfer "because these claims lacked factual support demonstrating a causal link between the civil actions [plaintiff] has filed and the denial of a transfer"); Wise v. Washington State Dep't of Corrections, 244 Fed. App'x 106, 108 (9th Cir. 2007), cert. denied, 552 U.S. 1282, 128 S. Ct. 1733, 170 L. Ed. 2d 518 (2008) (finding plaintiff's conclusory allegations of retaliation insufficient "without supporting facts

connecting the defendants to his litigation activities"); <u>Stine v. Bureau of Prisons</u>, No. 2:18-CV-0684-KJN (P), 2018 WL 2771332, at *6 (E.D. Cal. June 7, 2018) (finding plaintiff's generalized assertion regarding retaliation insufficient to demonstrate that each named defendant retaliated against plaintiff for his protected conduct).  Second, to the extent Plaintiff sufficiently alleges claims for retaliation against some defendants, as discussed below, he fails to allege any specific facts supporting a retaliation claim against any of the defendants mentioned in Claim One.  Third, even if each incident of retaliation was based on the same alleged protected conduct, each adverse action is distinct and the claims, therefore, do not arise out of the same "transaction, occurrence, or series of transactions."  <u>See Hollis v. Gonzalez</u>, No. 1:08-CV-1834-OWW-DLB (PC), 2010 WL 2555781, at *6 (E.D. Cal. June 18, 2010), <u>report and recommendation adopted</u>, 2010 WL 3153963 (E.D. Cal. Aug. 9, 2010) (dismissing unrelated claims of retaliation for "grievance activity" against different prison staff members as improperly joined).

Hence, Plaintiff's various unrelated claims against different defendants are improperly joined under Rule 20 and must be brought in separate lawsuits. In the event Plaintiff files a Third Amended Complaint that once again improperly joins unrelated claims and defendants, the Court is inclined to dismiss all but the defendants named in Claim One, without prejudice.  <u>See Kirakosian</u>, 2017 WL 3038307, at *3.  Accordingly, the Court will now address the merits of Claim One.

**B.    THE ELEVENTH AMENDMENT BARS ALL SECTION 1983 CLAIMS FOR MONETARY DAMAGES AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY**

**1.    Applicable Law**

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." <u>Brooks v. Sulphur Springs Valley Elec. Co-op.</u>, 951 F.2d 1050, 1053 (9th Cir. 1991) (citing <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)).  This jurisdictional bar

includes "suits naming state agencies and departments as defendants," and it applies whether a plaintiff "seek[s] damages or injunctive relief." Id.; Pennhurst State School, 465 U.S. at 102. As to state officials sued in their official capacity, the Eleventh Amendment immunizes state officials sued in their official capacity from claims for retrospective relief (including monetary damage claims) but does not immunize them from claims for prospective relief (such as forward-looking injunctive relief). Kentucky v. Graham, 473 U.S. 159, 169-70, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908).

### 2. Analysis

Here, Plaintiff's claims against Defendants in their official capacity for monetary damages are barred by the Eleventh Amendment. See Graham, 473 U.S. at 169-70 (holding the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity"). Plaintiff's claims against Defendants in their official capacity for monetary damages are, thus, subject to dismissal.

## C. THE SAC FAILS TO STATE A CLAIM AGAINST DEFENDANT SABO

Defendant Sabo is sued in his individual and official capacities for (a) First Amendment access to courts; (b) Eighth Amendment "threats to safety"; (c) First Amendment retaliation; and (d) Eighth Amendment deliberate indifference.[2] SAC at 3.

///
///
///

---

[2] The sole factual allegations against defendant Sabo appear to be set forth in Claim One. While defendant Sabo's name appears in Claim Four, Plaintiff's conclusory allegation that defendant Sabo "deprived [Plaintiff] of medical care", SAC at 23, without any supporting facts, is insufficient to state a claim for deliberate indifference. See Starr, 652 F.3d at 1216.

1    **1.   The SAC Fails to State a First Amendment Claim for Access to**
2        **Courts against Defendant Sabo**

3        **a.   Applicable Law**

4        The First and Fourteenth Amendments guarantee a right to access courts for
5    the purpose of challenging one's conditions of confinement.  See Silva v. Di Vittorio,
6    658 F.3d 1090, 1103 (9th Cir. 2011).  To state an access to courts claim, a plaintiff
7    "must identify a nonfrivolous, arguable underlying claim" that the plaintiff has been
8    or will be unable to pursue properly because the defendants' actions have denied the
9    plaintiff meaningful access to the courts.  Christopher v. Harbury, 536 U.S. 403, 415,
10   122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002).  In addition, a plaintiff must allege he
11   suffered an "actual injury" – that is, "actual prejudice with respect to contemplated or
12   existing litigation, such as the inability to meet a filing deadline or to present a claim."
13   Nev. Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis v.
14   Casey, 518 U.S. 343, 348-49, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)); Himes v.
15   Gastelo, No. 2:18-CV-00327-PSG (MAA), 2019 WL 1865160, at *5 (C.D. Cal. Jan. 30,
16   2019).

17       **b.   Analysis**

18       Here, Plaintiff fails to allege any facts demonstrating defendant Sabo, in any
19   way, affected Plaintiff's meaningful access to the courts.  See Fed. R. Civ. P. 8(a);
20   Little v. Baca, No. CV 13–0373-PA (RZ), 2013 WL 436018, at *3 (C.D. Cal. Feb. 1,
21   2013) (finding unclear pleadings that "leav[e] it to the Court to figure out what the full
22   array of [Plaintiff's] claims is and upon what federal law, and upon what facts, each
23   claim is based," are subject to dismissal).  In addition, Plaintiff fails to describe a non-
24   frivolous, underlying claim he was prevented from pursuing.  See Harbury, 536 U.S. at
25   417-18 ("[T]he complaint should state the underlying claim in accordance with
26   Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued,
27   and a like plain statement should describe any remedy available under the access claim
28   and presently unique to it.").  Finally, Plaintiff fails to allege he suffered any actual

1  injury to a particular court case.  See Greene, 648 F.3d at 1018.  Hence, Plaintiff's

2  access to courts claim against defendant Sabo is subject to dismissal.

3        **2.    The SAC Fails to State an Eighth Amendment Claim for "Threat**

4               **to Safety" or Deliberate Indifference against Defendant Sabo**

5               **a.    Applicable Law**

6        To state a claim under Section 1983 for failure to protect or threats to safety,

7  an inmate must allege facts to support that he was incarcerated under conditions

8  posing a substantial risk of harm and that prison officials were "deliberately

9  indifferent" to those risks.  Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970,

10  128 L. Ed. 2d 811 (1994).  Prison officials or private physicians under contract to treat

11  state inmates "violate the Eighth Amendment if they are 'deliberate[ly] indifferen[t] to

12  [a prisoner's] serious medical needs.'"  Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir.

13  2014) (alterations in original); Farmer, 511 U.S. at 828; West v. Atkins, 487 U.S. 42,

14  54, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).  To assert a deliberate indifference claim,

15  a prisoner plaintiff must show the defendant (1) deprived him of an objectively

16  serious medical need, and (2) acted with a subjectively culpable state of mind.  Wilson,

17  501 U.S. at 297.

18        "A medical need is serious if failure to treat it will result in 'significant injury or

19  the unnecessary and wanton infliction of pain.'"  Peralta, 744 F.3d at 1081.  "A prison

20  official is deliberately indifferent to [a serious medical] need if he 'knows of and

21  disregards an excessive risk to inmate health.'"  Id. at 1082.  This standard "requires

22  more than ordinary lack of due care."  Colwell v. Bannister, 763 F.3d 1060, 1066 (9th

23  Cir. 2014).  The "official must both be aware of facts from which the inference could

24  be drawn that a substantial risk of serious harm exists, and he must also draw the

25  inference."  Id.

26        "Deliberate indifference 'may appear when prison officials deny, delay, or

27  intentionally interfere with medical treatment, or it may be shown by the way in which

28  prison physicians provide medical care.'"  Id. (citing Hutchinson v. United States, 838

13

F.2d 390, 394 (9th Cir. 1988)).  In either case, however, the indifference to the inmate's medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996), cert. denied, 519 U.S. 1029, 117 S. Ct. 584, 136 L. Ed. 2d 514 (1996); see also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) (negligence constituting medical malpractice is not sufficient to establish an Eighth Amendment violation); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Similarly, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise" to a Section 1983 claim.  Franklin v. Or., State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981).  A plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health."  Jackson, 90 F.3d at 331.

### b.    Analysis

Here, Plaintiff appears to assert claims for "threats to safety" and deliberate indifference to serious medical needs against defendant Sabo based upon defendant Sabo's removal of Plaintiff's low bunk chrono.  However, Plaintiff's conclusory allegation that defendant Sabo "was well aware of [the] fact [that] a permanent chrono is only issued if an inmate has a substantial risk of serious harm that exist[s]," SAC at 16, is insufficient to plausibly allege defendant Sabo knew of, or disregarded, an excessive risk to Plaintiff's safety.  See Iqbal, 556 U.S. at 678.  Moreover, differences in medical judgment or opinion do not rise to the level of a constitutional violation.  See Jackson, 90 F.3d at 332.  Therefore, a difference in medical opinion between the physicians at CMF and the physicians at CMC, i.e. defendant Sabo, regarding Plaintiff's need for a low bunk chrono is insufficient to state a claim for deliberate

1    indifference.  Hence, Plaintiff's Eight Amendment claims against defendant Sabo are

2    subject to dismissal.[3]

3           **3.      The SAC Fails to State a First Amendment Claim for Retaliation**

4                   **against Defendant Sabo**

5                   **a.      Applicable Law**

6           Allegations of retaliation against a prisoner's First Amendment rights to speech

7    or to petition the government may support a Section 1983 claim.  See Pratt v.

8    Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  Within the prison context, a viable claim

9    of First Amendment retaliation entails five basic elements: (1) the prisoner engaged in

10   protected conduct; (2) an assertion that a state actor took some adverse action against

11   an inmate; (3) the adverse action was "because of" the prisoner's protected conduct;

12   (4) the adverse action chilled the inmate's exercise of his First Amendment rights; and

13   (5) the action did not reasonably advance a legitimate correctional goal.  Rhodes v.

14   Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

15                  **b.      Analysis**

16          Here, Plaintiff fails to allege any facts demonstrating defendant Sabo removed

17   the low bunk chrono, or took any other actions, in retaliation for protected conduct.

18   See Fed. R. Civ. P. 8(a); Little, 2013 WL 436018, at *3.  In fact, Plaintiff fails to

19   specifically identify any protected conduct for which defendant Sabo was acting in

20   retaliation.  To the extent Plaintiff is alleging defendant Sabo was retaliating against

21   him for having filed grievances at previous institutions, there is no allegation in the

22

23   ───────────────
     [3] Plaintiff's claim against defendant "Jane Doe – CMC intake nurse on 9/11/2019"

24   fails for the same reasons.  In addition, "the use of 'John Doe' to identify a defendant
     is not favored."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  Because

25   Plaintiff is unaware of the true name of the Jane Doe defendant, he will be given the
     opportunity to discover her name after he files a complaint curing the deficiencies

26   identified in this order.  Plaintiff is cautioned that if he is unable to timely identify the
     Doe defendant, the claim against the Doe defendant will be subject to dismissal

27   because the Court will not be able to order service against defendants who are
     unidentified.  See Augustin v. Dep't of Public Safety, 2009 WL 2591370, at *3 (D.

28   Hawai'i Aug. 24, 2009); Williams v. Schwarzenegger, 2006 WL 3486957, at *1 (E.D.
     Cal. Dec. 1, 2006).

1  SAC that defendant Sabo was even aware of any such prior grievances.  Hence,

2  Plaintiff's retaliation claim against defendant Sabo is subject to dismissal.

3  **D.    THE SAC FAILS TO STATE A CLAIM AGAINST DEFENDANTS**

4  **GATES, MACIAS, STEEK, HUGHES, TAYLOR, NUDIS, LINO,**

5  **REYNOSO, COX, OR TOMASINI, OR GASTELO**

6  In Claim One, Plaintiff sues defendants Gates, Macias, Steek, Hughes, Taylor,

7  Nudis, Lino, Reynoso, Cox, Tomasini, and Gastelo in their individual and official

8  capacities for failure "to correct issue thru [sic] grievance procedure exhibiting

9  deliberate indifference."  SAC at 3-4, 7-8.  Plaintiff, however, is not entitled to any

10  particular response to his grievances or to have his grievances "processed to [his]

11  liking."  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no

12  legitimate claim of entitlement to a grievance procedure."); Jordan v. Asuncion, No.

13  CV 17-1283 PSG (SS), 2018 WL 2106464, at *3 (C.D. Cal. May 7, 2018) ("[A]

14  prisoner [does not] have a constitutional right to any particular grievance outcome.").

15  Moreover, the conclusory allegation that defendant Gastelo was "well aware of

16  the antics at CMC," SAC at 7, fails to allege any personal participation of defendant

17  Gastelo in the alleged constitutional violations.  See Fayle v. Stapley, 607 F.2d 858,

18  862 (9th Cir. 1979) (noting liability under Section 1983 arises only upon a showing of

19  personal participation by the defendant).  Defendant Gastelo is not liable for the

20  alleged constitutional violations of his subordinates merely by virtue of his role as

21  supervising officer.  See Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d

22  675, 680-81 (9th Cir. 1984) (holding a supervisor is only liable for constitutional

23  violations of his subordinates if the supervisor participated in or directed the

24  violations, or knew of the violations and failed to act to prevent them); Taylor v. List,

25  880 F.2d 1040, 1045 (9th Cir. 1989) (holding there is no respondeat superior liability

26  under Section 1983).

27  Hence, Plaintiff's claim against defendants Gates, Macias, Steek, Hughes,

28  Taylor, Nudis, Lino, Reynoso, Cox, Tomasini, and Gastelo is subject to dismissal.

**V.**

**LEAVE TO FILE A THIRD AMENDED COMPLAINT**

For the foregoing reasons, the SAC is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is advised that the Court's determination herein that the allegations in the SAC are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in his Third Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following three options:

1.      Plaintiff may file a Third Amended Complaint to attempt to cure the deficiencies discussed above. The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the Third Amended Complaint, which the Court encourages Plaintiff to use.

If Plaintiff chooses to file a Third Amended Complaint, he must clearly designate on the face of the document that it is the "Third Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form. **Plaintiff shall not include new defendants or allegations that are not reasonably related to the**

1   **claims asserted in the Complaint.**  In addition, the Third Amended Complaint

2   must be complete without reference to the SAC, FAC, Complaint, or any other

3   pleading, attachment, or document.

4        An amended complaint supersedes the preceding complaint.  <u>Ferdik v.</u>

5   <u>Bonzelet</u>, 963 F.2d 1258, 1262 (9th Cir. 1992).  After amendment, the Court will treat

6   all preceding complaints as nonexistent.  <u>Id.</u>  **Because the Court grants Plaintiff**

7   **leave to amend as to all his claims raised here, any claim raised in a preceding**

8   **complaint is waived if it is not raised again in the Third Amended Complaint.**

9   <u>Lacey v. Maricopa Cty.</u>, 693 F.3d 896, 928 (9th Cir. 2012).

10       The Court advises Plaintiff that it generally will not be well-disposed toward

11  another dismissal with leave to amend if Plaintiff files a Third Amended Complaint

12  that continues to include claims on which relief cannot be granted.  "[A] district

13  court's discretion over amendments is especially broad 'where the court has already

14  given a plaintiff one or more opportunities to amend his complaint.'"  <u>Ismail v. Cty.</u>

15  <u>of Orange</u>, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); <u>see also</u> <u>Ferdik</u>, 963 F.2d at

16  1261.  Thus, **if Plaintiff files a Third Amended Complaint with claims on which**

17  **relief cannot be granted, the Third Amended Complaint will be dismissed**

18  **without leave to amend and with prejudice.**

19       2.    Alternatively, Plaintiff may file a notice with the Court that he intends to

20  stand on the allegations in his SAC.  If Plaintiff chooses to stand on the SAC despite

21  the deficiencies in the claims identified above, then the Court will submit a

22  recommendation to the assigned district judge **that the action be dismissed in its**

23  **entirety**, subject to Plaintiff's right at that time to file Objections with the district

24  judge as provided in the Local Rules Governing Duties of Magistrate Judges.

25       3.    Finally, Plaintiff may voluntarily dismiss the action without prejudice,

26  pursuant to Federal Rule of Civil Procedure 41(a).  <u>The Clerk of Court is directed to</u>

27  <u>mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff</u>

28  <u>to use if he chooses to voluntarily dismiss the action.</u>

1    **Plaintiff is explicitly cautioned that failure to timely respond to this**

2    **Order will result in this action being dismissed with prejudice for failure to**

3    **state a claim, or for failure to prosecute and/or obey Court orders pursuant to**

4    **Federal Rule of Civil Procedure 41(b).**

5

6    Dated:  August 10, 2020

7    _____
     HONORABLE KENLY KIYA KATO

8    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28